**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| ROSE M.[1], | Case No. CV 19-7681-AS |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's decision is affirmed.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**Proceedings**

On September 5, 2019, Plaintiff filed a Complaint seeking review of the Commissioner's denial of Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. (Dkt. No. 1). On February 25, 2020, Defendant filed an Answer and the Administrative Record ("AR"). (Dkt. Nos. 15-16). The parties have consented to proceed before a United States Magistrate Judge. (Dkt. Nos. 10, 12). On June 11, 2020, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Dkt. No. 19).

The Court has taken this matter under submission without oral argument. See C.D. Cal. C. R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On May 31, 2016, Plaintiff, previously employed as a bank collection clerk (see AR 241), filed a DIB application alleging a disability onset date of July 6, 2015. (AR 144-45). Plaintiff's application was denied initially on October 19, 2016 (AR 65, 81-84), and upon reconsideration on December 8, 2016 (AR 78, 86-90).

On September 14, 2018, Administrative Law Judge ("ALJ") Edward T. Bauer heard testimony from Plaintiff, who was represented by counsel, and vocational expert ("VE") Elizabeth G. Ramos. (AR 35-

53). On November 21, 2018, the ALJ issued a decision denying Plaintiff's application. (See AR 15-30).

The ALJ applied the requisite five-step process to evaluate Plaintiff's case. At step one, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since July 6, 2015, the alleged onset date. (AR 18). At step two, the ALJ found that Plaintiff has the following severe impairments: diabetes mellitus, obesity, hypertriglyceridemia, migraine, major depressive disorder, anxiety disorder, panic disorder, and insomnia. (AR 18). At step three, the ALJ determined that Plaintiff's impairments do not meet or equal a listing found in 20 C.F.R Part 404, Subpart P, Appendix 1. (AR 18). Next, the ALJ found that Plaintiff has the following Residual Functional Capacity ("RFC"):[2]

> [Plaintiff can] perform medium work as defined in 20 CFR 404.1567(c)[3] except that she can lift and carry 50 pounds occasionally and 25 pounds frequently; can stand and/or walk for six hours; can sit without limitation; can perform all climbing activities frequently; is limited to simple, routine tasks; can have no public contact; can have only occasional contact with

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R §§ 404.1545(a)(1), 416.945(a)(1).

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. 404.1567(c).

>       supervisors and co-workers; and is limited to low stress
>       work, which is defined to mean work involving no strict
>       production deadlines or quotas.

(AR 21).

At step four, the ALJ found that Plaintiff is unable to perform her past relevant work as a collection clerk. (AR 28). At step five, based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including machine feeder, factory helper, and laundry worker I. (AR 29). Accordingly, the ALJ concluded that Plaintiff is not disabled. (AR 30).

On July 25, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1-3). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a

4

finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## DISCUSSION

Plaintiff claims that the ALJ erred in considering the medical opinions of two treating psychiatrists, Dr. Alicia Desai Kohm and Dr. Novellyn Heard. (Joint Stip. at 2-13, 20-21). After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.[4]

**A.    Legal Standard for ALJ's Assessment of Medical Opinions**

In an ALJ's assessment of medical opinions, a treating doctor's opinion is generally afforded the greatest weight, though it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. Batson v.

---

[4] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 416.927(c)(2); see Trevizo v. Berryhill, 871 F.3d 664 (9th Cir. 2017). When a treating physician's opinion is not controlling, it is weighted based on factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record as a whole, and specialization of the physician. 20 C.F.R. § 416.927(c)(2)-(6). If a treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Lester, 81 F.3d at 830-31.

**B.   ALJ's Assessment of Dr. Kohm's Opinion**

Psychiatrist Alicia Desai Kohm, M.D., treated Plaintiff on two occasions – first on August 13, 2015 (AR 569-84), and then about a month later, on September 17, 2015 (AR 624-35). On both dates, Dr. Kohm assessed Plaintiff's "mental functional

6

impairments" (AR 575, 628), and extended Plaintiff's disability leave (which began prior to Dr. Kohm's treatment) (AR 576-77, 629).

On August 13, 2015, Dr. Kohm opined that Plaintiff had moderate-to-severe limitations in the following areas: "[a]bility to control emotions and maintain composure, free of crying spells, anger outbursts"; and "[a]bility to deal with the usual stressors encountered in the workplace, maintain regular attendance, and complete a normal workday or work week." (AR 575). Dr. Kohm stated, moreover, that Plaintiff was moderately impaired in her "[a]bility to perform detailed and complex tasks"; "[a]bility to maintain concentration, attention, persistence, and pace"; and "[e]nergy level." (AR 575). Dr. Kohm found that Plaintiff had mild-to-moderate limitations in the following areas: "[a]bility to perform simple and repetitive tasks"; "[p]roblem solving & [d]ecision-making i.e. ability to plan, organize and do things"; "[a]bility to perform activities without special or additional supervision"; and "[a]bility to drive or take public transportation." (AR 575). Finally, Dr. Kohm opined that Plaintiff was only mildly impaired in her "[a]bility to relate and interact with co-workers and the public," and she had no impairment in her "[h]ygiene and grooming"; "[a]bility to accept instructions from supervisors"; "[a]bility to control threatening or dangerous behaviors"; and "[a]wareness of hazards." (AR 575).

On September 17, 2015, Dr. Kohm's assessment was somewhat less restrictive. (AR 628). Among other things, Dr. Kohm found Plaintiff had only a moderate impairment (as opposed to moderate-

7

to-severe) in her "[a]bility to control emotions and maintain composure, free of crying spells, anger outbursts"; and "[a]bility to deal with the usual stressors encountered in the workplace, maintain regular attendance, and complete a normal workday or work week." (AR 628). Dr. Kohm also found Plaintiff had a mild-to-moderate limitation (as opposed to moderate) in her "[e]nergy level" and "[a]bility to maintain concentration, attention, persistence, and pace"; and no limitation (as opposed to mild) in her "[a]bility to relate and interact with co-workers and the public." (AR 628). Despite the apparent improvements, Dr. Kohm still extended Plaintiff's disability leave. (AR 629). Dr. Kohm additionally noted Plaintiff should continue her current dosage of Paxil that she had been taking for just the past week, and advised Plaintiff to follow up with a therapist (or group therapy) and return for a follow-up psychiatry appointment in one to two months, but with a different provider because Dr. Kohm was leaving the office at the end of September. (AR 628-29).

The ALJ gave Dr. Kohm's assessments "limited" or "partial weight." (AR 24). Among other things, the ALJ determined that Dr. Kohm's August 2015 assessment, which included some severe limitations, was not "intended to last for 12 months," given that Dr. Kohm's subsequent assessment, in September, showed improvement and included only "moderate" limitations, at most. (AR 24; see AR 575 (August), 628 (September)). Overall, the ALJ determined that Dr. Kohm's assessments were not "fully consistent with the longitudinal medical records and other evidence," as discussed in the decision (AR 24). The ALJ included the following mental

limitations in the RFC: "[Plaintiff] is limited to simple, routine tasks; can have no public contact; can have only occasional contact with supervisors and co-workers; and is limited to low stress work, which is defined to mean work involving no strict production deadlines or quotas." (AR 21).

Plaintiff claims that the ALJ failed to provide specific and legitimate reasons for giving less than significant weight to Dr. Kohm's opinion. (Joint Stip. at 6-13). Plaintiff contends, first, that the ALJ mischaracterized the difference between Dr. Kohm's August and September assessments, particularly by failing to consider that Dr. Kohm still found that Plaintiff was unable to return to work in September 2015, despite some improvements from the earlier assessment. (Id. at 6-7). Thus, Plaintiff asserts that the ALJ had no basis for assuming that Dr. Kohm's August 2015 opinion was not intended to last for twelve months. (Joint Stip. at 7). Instead, Plaintiff argues, the ALJ had a duty to develop the record on this issue. (Id.).

However, Plaintiff has failed to show that the ALJ misstated or overlooked anything in Dr. Kohm's assessments. To the contrary, the ALJ accurately described the two assessments and drew reasonable inferences from them. Specifically, in light of the reduced limitations in the September assessment, it was reasonable to infer that the more severe limitations opined in the August assessment were intended only to describe Plaintiff's functioning during that particular assessment and not over a long-term period (i.e., more than twelve months). Plaintiff may interpret the

opinion differently, but "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Moreover, notwithstanding Plaintiff's contention, the fact that Dr. Kohm still extended Plaintiff's disability leave in September 2015 does not render Dr. Kohm's assessments "ambiguous" or insufficiently clear so as to trigger the ALJ's duty to develop the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ's duty to develop the record is triggered only when there is "ambiguous evidence" or when "the record is inadequate to allow for proper evaluation of the evidence"); see also McLeod v. Astrue, 640 F.3d 881, 884 (9th Cir. 2011) (ALJ had no duty to request more information from two physicians where their records from the relevant period were before the ALJ, and there "was nothing unclear or ambiguous about what they said").

Plaintiff contends that the ALJ erred "by stating that the limitations suggested by Dr. Kohm in September of 2015 are not 'inconsistent' with plaintiff's RFC." (Joint Stip. at 9) (citing AR 24). In particular, Plaintiff asserts that the ALJ failed to include in the RFC any limitations related to being off-task or missing workdays, despite Dr. Kohm's opinion that Plaintiff was moderately limited in her ability to maintain regular attendance, complete a normal workweek, and control her emotions and maintain composure. (Joint Stip. at 9) (citing AR 21, 628). Plaintiff also claims that the RFC's restriction to "simple routine tasks" is less limited than Dr. Kohm's assessment of a moderate impairment in

performing "simple and repetitive tasks."  (Joint Stip. at 9) (citing AR 21, 628).

However, even to the extent that the RFC may diverge from the limitations in Dr. Kohm's September 2015 assessment, Plaintiff has failed to demonstrate any error because the ALJ did not purport to adopt Dr. Kohm's assessments in any respect.  Instead, the ALJ merely remarked that the moderate limitations in Dr. Kohm's September 2015 assessment were not "clearly inconsistent" with the RFC.  (AR 24).  At the same time, the ALJ expressly stated: "I do not find [Dr. Kohm's assessments] to be fully consistent with the longitudinal medical records and other evidence . . . ."  The ALJ thus gave Dr. Kohm's assessments only "limited weight to the extent that they are in line with" the RFC finding.  (AR 24).  The ALJ provided specific and legitimate reasons for this determination.

Plaintiff disputes the ALJ's finding that Plaintiff's mental "impairments are generally managed with conservative treatment measures."  (Joint Stip. at 10-11; AR 26).  Plaintiff asserts that her psychiatrists have prescribed her "a variety of psychotropic medications, and changed the dosages frequently, since the alleged onset date."  (Joint Stip. at 10).  Plaintiff points out, for example, that one psychiatrist, Dr. Sultana Ikramullah, had prescribed Trazodone and Paxil as of August 27, 2017 (AR 3797), and then increased the Paxil dosage at the next visit, on October 5, 2017, when Plaintiff complained of increasing depression (AR 3799).  About a month later, on November 2, 2017, Dr. Ikramullah increased the Paxil and Trazodone dosages.  (AR 3800).  Later, on

January 25, 2018, Dr. Ikramullah switched Plaintiff from Paxil to Prozac after Plaintiff complained of feeling "spaced out" and unable to concentrate. (AR 3801). Plaintiff points out that she has also "required treatment with various psychologists, as well as group therapy." (Joint Stip. at 11) (citing AR 674-678, 702-706, 848, 886, 3845-3856).

Regardless of these facts, substantial evidence in the record supports the ALJ's finding that Plaintiff's mental conditions were generally well managed with conservative treatments, such as therapy and antidepressant medications such as Trazodone and Paxil. The ALJ referenced treatment records noting that Plaintiff "[t]hinks the paxil has helped reduce her anxiety" (AR 625 (September 2015)), that she "[r]eports better sleep since [Plaintiff] increased trazadone to 100 mg qhs for the past week" (AR 637 (October 2015)), and that she reportedly "attended depression group in the past which was helpful" (AR 989 (September 2016)), and noted that there was no indication that Plaintiff's mental impairments have required more aggressive interventions, such as inpatient hospitalizations.

The ALJ noted that even "to the extent that any of [Plaintiff's] impairments have ever been described as less than well managed with conservative measures, this state of affairs may be due at least in part to [Plaintiff's] frequent failures and/or refusals to comply fully with treatment advice." (AR 27). The ALJ pointed to numerous examples from the treatment records indicating that Plaintiff was apparently skipping some prescribed

12

medications, taking less than recommended dosage amounts, and missing scheduled appointments. (AR 27) (citing, e.g., AR 278, 284, 327, 760, 802, 868, 970, 989, 3802, 3850, 3853). This finding, which Plaintiff does not dispute, further supports the ALJ's decision to give only limited weight to Dr. Kohm's opinion.

Plaintiff also disputes the ALJ's finding that Dr. Kohm's opinion is not "well-supported by the objective data and other evidence – including [Plaintiff's] modest clinical findings . . . as well as her treatment notes[.]" (Joint Stip. at 11-12; AR 23). Plaintiff contends that the objective findings overall support Dr. Kohm's opinion. (Joint Stip. at 12). As examples, Plaintiff points to three mental status exams between 2016 and 2018. (Joint Stip. at 12). In the first, on August 17, 2016, Plaintiff's therapist, Wendy Elizabeth Marinoff, noted a depressed mood, psychomotor retardation, fatigue, and low motivation. (AR 918-19). In the second, on April 26, 2017, Dr. Ikramullah noted agitated psychomotor activity, slow and emotional speech, depressed mood, slow thought processes, impaired concentration, phobias of heights, and compulsions. (AR 3793-2794). Finally, in the third, on May 30, 2018, Plaintiff's therapist, Jennifer Fog, Ph.D., noted suicidal ideation with a plan, tired mood, decreased concentration, and short-term memory loss. (AR 3854). Plaintiff contends that the ALJ's account of the objective evidence of mental impairments is "far off the mark," and particularly "seems to rely upon evidence showing plaintiff's improvement in the short-term, without considering the longitudinal treatment record." (Joint Stip. at 12).

The Court disagrees. The ALJ gave a fairly detailed account of the objective medical evidence, and did not overlook the fact that Plaintiff's treating sources noted Plaintiff's anxious or depressed moods and dysphoric affect. (AR 23). The ALJ reasonably found, however, that aside from these moderate mental status impressions, the record was "largely lacking in data of clinical significance," as there are "no significantly abnormal cognitive function tests, repeatedly dire mental status examination findings ('MSE'), or other such data to establish major memory loss, attention and concentration deficits, mood disturbances, social difficulties, or other issues." (AR 23) (citing, e.g., AR 266, 279, 284, 290, 294-95, 306, 326-27, 330, 345, 356, 869, 899, 969, 990-91, 3792-3856). Substantial evidence in the record thus supports the ALJ's determination that the objective evidence and data as a whole fail to demonstrate mental limitations beyond those included in the RFC.

Plaintiff additionally contends that the ALJ erred to the extent he discounted Dr. Kohm's opinion based on Plaintiff's purported ability to engage in exercise and daily activities. (Joint Stip. at 9-10). Plaintiff asserts that her ability to exercise "for some part of the day does not prove that she is able to work eight hours per day, five days per week." (Joint Stip. at 10). Plaintiff contends that the ALJ did not "cite any evidence showing plaintiff exercised after 2016, and there is substantial evidence showing she lays down for a significant part of the day." (Joint Stip. at 10) (citing AR 637, 842, 898, 3379, 3799, 3845, 3849, 3852).

14

However, the ALJ does not appear to have considered Plaintiff's ability to exercise or engage in daily activities as a basis for discounting Dr. Khom's opinion or otherwise determining Plaintiff's mental limitations. Instead, the ALJ merely mentioned Plaintiff's ability to engage in exercise and daily activities in the course of generally noting that he considered all the opinion evidence in the record in reaching his overall conclusions. Specifically, the ALJ stated that in addition to considering the "formal opinions of treating providers," such as Dr. Kohm's two assessments in August and September 2015, he also considered "the less formal opinion evidence - such as the remarks from treating sources (including Dr. Kohn and others) that suggest [Plaintiff] has been advised that she should (and thus, presumably can) engage in at least some forms of exercise." (AR 23) (citing, e.g., AR 577, 629, 809, 853, 858, 3857). Regardless, Plaintiff does not dispute that her treatment records do contain indications that she engages in exercise and was encouraged to do so, which the ALJ correctly noted.

Accordingly, Plaintiff has failed to demonstrate any error in the ALJ's consideration of Dr. Kohm's medical opinion, which is grounded in specific and legitimate reasons, supported by substantial evidence in the record.

**C.  ALJ's Assessment of Dr. Heard's Opinion**

Plaintiff contends the ALJ erred by failing to address an opinion of Dr. Novellyn Heard, M.D., a psychiatrist who treated

15

1  Plaintiff from October 2015 through September 2016.  (Joint Stip.
2  at 20-21; AR 637, 990-92).  Specifically, Plaintiff argues that
3  the ALJ should have addressed Dr. Heard's notation, in several
4  treatment notes, that Plaintiff was "[u]nable to keep a regular
5  schedule."  (Joint Stip. at 20-21; AR 711, 842, 989).  Plaintiff
6  asserts that Dr. Heard's notation qualifies as a "medical opinion"
7  under 20 C.F.R. § 404.1527, which defines "medical opinions" as
8  "statements from acceptable medical sources that reflect judgments
9  about the nature and severity of your impairment(s), including your
10 symptoms, diagnosis and prognosis, what you can still do despite
11 impairment(s), and your physical or mental restrictions."  (Joint
12 Stip. at 21) (quoting 20 C.F.R. § 404.1527(a)(1)).

14     However, as Defendant points out, Dr. Heard's notation – that
15 Plaintiff was "[u]nable to keep a regular schedule" – seems to
16 refer to Plaintiff's subjective allegations, not Dr. Heard's
17 opinion of Plaintiff's limitations or abilities.  (See Joint Stip.
18 at 22).  This is evident because the notation appears in the
19 treatment notes as part of Plaintiff's account of her condition
20 and activities at the time of the respective treatment sessions.
21 Indeed, the first time the notation appears, on December 16, 2015,
22 it is in a section labeled "Subjective," which reads as follows:

24     [Plaintiff's] grandmother died on 12/13/'15.
25     [Plaintiff's] brother is dying of AIDS. [Plaintiff] is
26     only taking half the prescribed dose of Paxil.
27     [Plaintiff's] husband is against her taking meds.
28     [Plaintiff] feels depressed. Denies [suicidal ideation,

16

> homicidal ideation]. Sleeps well when takes trazodone. Sleeps poorly when doesn't take trazodone. Appetite-baseline. Conc, energy, interests-below baseline. Denies recent panic attacks. Often feels worried and irritable.
>
> Better, but still impaired [functioning]. Spends less time in bed. Better, but below baseline bathing and grooming.
>
> Poor stress tolerance. [Plaintiff] still struggles with chores. <u>Unable to keep a regular schedule.</u> difficulty controlling [sic] her emotions. [Plaintiff's] mother still assists her.
>
> Last worked in 7/'15. [Plaintiff] is employed in a call center for Bank of America.
>
> Denies side effects. No [complaints of] headaches.

(AR 711) (emphasis added). In later treatment notes, the section is labeled "Current," rather than "Subjective," but it remains clear from the context that this is still intended to represent Plaintiff's subjective account, not Dr. Heard's own impression of Plaintiff's abilities. For example, a treatment note from May 25, 2016 reads:

> [Complains of] increased stress. Feels depressed and anxious. Denies panic attacks, [suicidal ideation,

17

> homicidal ideation]. Often feels worried and irritable. Appetite, conc, energy, interests-below baseline. Sleep-better. Impaired [functioning]-spends a lot of time in bed. Below baseline bathing and grooming. Poor stress tolerance. [Plaintiff] is still not mopping and ironing.
>
> <u>Unable to keep a regular schedule.</u> Difficulty controling [sic] her emotions. [Plaintiff's] family still assist her. [Plaintiff] didn't resume attending depression group. Better med compliance.
>
> Currently on DMI until 6/30/'16. [Plaintiff] is employed in a call center for Bank of America. Last worked in 7/'15. [Plaintiff] is considering applying for SSI. Side effects?-forgetfulness. Denies daytime sedation. Has long [history of] migraines prior to taking meds. Migraine medication helps.

(AR 842) (emphasis added).

Because Dr. Heard's notations about Plaintiff's inability to "keep a regular schedule" refer to Plaintiff's subjective statements, they do not constitute a medical opinion under 20 C.F.R. § 404.1527(a)(1). Accordingly, the ALJ did not err in failing to consider these statements as Dr. Heard's treating medical opinion.

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 10, 2020

```
              _____/s/_____
                       ALKA SAGAR
              UNITED STATES MAGISTRATE JUDGE
```